Filed 1/30/24  In re B.M. CA2/4

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FOUR

|  |  |
|---|---|
| In re B.M. et al., Persons Coming Under the Juvenile Court Law. | B328114<br><br>(Los Angeles County Super. Ct. Nos. 18CCJP03690, 18CCJP03690E-H |
| LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES,<br><br>     Plaintiff and Respondent,<br><br>     v.<br><br>W.V.,<br><br>     Defendant and Appellant. |  |

APPEAL from an order of the Superior Court of Los Angeles County, Pete R. Navarro, Judge Pro Tempore. Affirmed.

Cristina Gabrielidis, under appointment by the Court of Appeal, for Defendant and Appellant.

Dawyn R. Harrison, County Counsel, Kim Nemoy, Assistant County Counsel, Brian Mahler, Deputy County Counsel, for Plaintiff and Respondent.

---

## INTRODUCTION

This is one of the increasingly common juvenile dependency cases that follows a certain fact pattern. The Los Angeles County Department of Children and Family Services (DCFS) failed to comply with its inquiry requirements under the Indian Child Welfare Act of 1978 (25 U.S.C. § 1901 et seq.) (ICWA) and related state laws (Welf. & Inst. Code, § 224 et seq.[1]). The parents of the child affirmatively represented to DCFS and the juvenile court that they do not have Native American ancestry. Following termination of parental rights under section 366.26, however, a parent appealed on the grounds that ICWA inquiries were not made of certain members of the child's extended family. (See, e.g., *In re Ezequiel G.* (2022) 81 Cal.App.5th 984, 995.) We agree with our colleagues in Division Three of this district that these cases "unquestionably delay permanency for some of the most vulnerable children in our juvenile court system," and are "ineffective in protecting the interests of the Indian communities and families for whose benefit ICWA was enacted." (*Ibid.*) In this case, we are tasked with determining whether DCFS's inquiry failures require the matter to be remanded. Under the circumstances here, we find the error harmless and therefore affirm.

---

[1] All further undesignated statutory references are to the Welfare and Institutions Code.

2

**FACTUAL AND PROCEDURAL BACKGROUND**

Because this appeal involves a challenge under ICWA, we include only the facts relevant to that issue. Appellant W.V. (father) is the father of child, A., born in December 2013. Father, A.'s mother (mother), and four children (A. and her three older half-siblings[2]) lived in an RV that was infested with cockroaches and lacked running water; the children were dirty, had not been receiving medical care, and were not enrolled in school. DCFS detained the children on June 30, 2020, following a referral stating that the children were living in filthy conditions and were exposed to physical and emotional abuse.

After the children were detained, assessments revealed that A. had speech delays, developmental delays, and abscesses in her teeth; she also needed glasses. The children's caregiver noted that the children did not understand basic hygiene concepts such as how to shower or brush their teeth.

DCFS filed a petition under section 300, subdivision (b), which the court later sustained. The court ordered the children returned to mother and father's care with DCFS supervision and family maintenance services. However, following a violent domestic dispute in the presence of the children in October 2020, as well as allegations that parents continued to medically neglect the children and maintain an unsanitary home, the court again ordered the children removed from parents. DCFS filed a supplemental petition under section 387, which the court later sustained. The children were not returned to parents' care.

Throughout the case, mother and father affirmatively represented that they had no Native American heritage. DCFS

---

[2]     The half-siblings are mother's children with different fathers, and are not at issue in this appeal.

3

noted that in a previous dependency case in 2018, the court found ICWA did not apply.  Both father and mother reported to DCFS that they were born in Honduras.  Both parents filed parental notification of Indian status forms with the juvenile court on July 7, 2020 denying Native American ancestry.  Father filed another such form on December 3, 2020.  At the detention hearing on July 7, 2020, the court noted the parents' denials, and found that ICWA did not apply with respect to A.  At the adjudication hearing on August 27, 2020, the juvenile court again found that ICWA did not apply with respect to either parent.

DCFS made no further ICWA inquiries relevant to A., and the court made no further ICWA findings relevant to A. A CSW spoke with mother's adult daughter, Ana, who lived in New York and had never met the younger children.  Ana said mother left her and her siblings in Honduras when Ana was a child.  A CSW also spoke with a woman named Vanessa who identified herself as mother's sister.  However, Ana, mother, and a reporting party said Vanessa was an unrelated acquaintance.[3]  The record does not indicate that DCFS made any ICWA inquiries of Ana or Vanessa.

A CSW met with father's adult daughter J. on November 20, 2020 to discuss placing the children with her.  J. was born in Honduras; father was not involved in her life.  She immigrated to the United States at the age of 23.  J. had three children of her own: two adults and one teenager.  DCFS placed A. and her

---

[3]     The unidentified male reporter stated that Vanessa was using the children's social security numbers to fraudulently receive their financial benefits.  Mother also told her daughter Ana that Vanessa had committed identity theft by taking the children's birth certificates and social security cards.

minor half-siblings with J. in August 2021.  J. was willing to adopt all four children even though the three older children were not biologically related to her.  After being placed with J., the children thrived in her care and said they wanted to stay with her.  At various times throughout the case, CSWs discussed the children with J. and visited them at J.'s home, but the record does not note any related ICWA inquiries.

Mother failed to comply with the case plan, and father only partially complied.  On December 13, 2021, the juvenile court terminated reunification services for both parents.  On March 15, 2023, the court terminated mother's and father's parental rights pursuant to section 366.26.  The court found a permanent plan of adoption with J. to be appropriate.  Father timely appealed.

## DISCUSSION

Father argues that the section 366.26 ruling terminating his parental rights must be reversed and the matter remanded because DCFS spoke with J., Ana, and Vanessa (whom father refers to as a "maternal aunt") over the course of the case, but failed to make any ICWA-related inquiries of them.  We disagree that remand is warranted.

DCFS has an ongoing duty to ask "the child, parents, legal guardian, Indian custodian, extended family members, others who have an interest in the child, and the party reporting child abuse or neglect, whether the child is, or may be, an Indian child."  (§ 224.2, subd. (b).)  A juvenile court may determine that ICWA does not apply only after "proper and adequate" inquiry and "due diligence as required in this section."  (§ 224.2. subd. (i)(2).) DCFS did not meet its burden of initial inquiry here.  The only ICWA information in this case came from mother's and father's own representations.  DCFS noted that the juvenile court

5

previously found that ICWA was not applicable, but nothing in the record indicates what inquiries were made during those proceedings.  Moreover, DCFS spoke with extended family members over the course of this case, including J. as she prepared to adopt the children, and the record reflects no ICWA-based inquiries of these family members.  Thus, the court's ICWA findings, based on mother's and father's representations and nothing more, failed to meet the requirements of section 224.2, and constitutes error.[4]

As in all appeals, however, the appellant must demonstrate not only error, but prejudice—a miscarriage of justice under article VI, section 13 of the California Constitution.  (See, e.g., *In re J.W.* (2022) 81 Cal.App.5th 384, 390; *In re D.B.* (2022) 87 Cal.App.5th 239, 245; *In re K.H.* (2022) 84 Cal.App.5th 566, 589 ["reviewing courts generally agree that reversal is dependent on showing prejudice, or a miscarriage of justice"].)  Thus, "[w]here, as here, there is no doubt that the Department's inquiry was erroneous, our examination as to whether substantial evidence supports the juvenile court's ICWA finding ends up turning on whether that error by the Department was harmless—in other words, we must assess whether it is reasonably probable that the juvenile court would have made the same ICWA finding had the

---

[4]     DCFS acknowledges that under section 224.2 it had a duty to make ICWA inquiries to extended family members and others.  Without conceding error or contending that any such error was harmless, however, DCFS asserts that it does not matter that it failed to inquire of extended family members under ICWA, because both mother and father reported that they were born in Honduras.  DCFS cites no authority, and we are aware of none, exempting the department from meeting ICWA requirements when the child's parents are born outside the United States.

inquiry been done properly.  [Citation.]  If so, the error is harmless and we should affirm; otherwise, we must send it back for the Department to conduct a more comprehensive inquiry." (*In re Dezi C*. (2022) 79 Cal.App.5th 769, 777, review granted, Sept. 21, 2022, No. S275578 (*Dezi C*.).)

California appellate courts have crafted several different tests for deciding whether a defective initial ICWA inquiry is harmless.  Until our Supreme Court provides guidance on the matter, this division follows the reasoning of *Dezi C*., in which Division Two of this district held, "[A]n agency's failure to conduct a proper initial inquiry into a dependent child's American Indian heritage is harmless unless the record contains information suggesting a reason to believe that the child may be an 'Indian child' within the meaning of ICWA, such that the absence of further inquiry was prejudicial to the juvenile court's ICWA finding."  (*Dezi C., supra*, 79 Cal.App.5th at p. 779.)

Here, father's appellate briefing makes no effort to show that DCFS's failure to inquire was prejudicial. He cites three cases[5] for the proposition that insufficient ICWA inquiry *can be* prejudicial.  However, his prejudice argument regarding this case consists of a single, conclusory sentence asserting that "the failure to inquire of the children's relatives regarding any Indian ancestry was prejudicial."  DCFS's respondent's brief responds nearly in kind, failing to mention the issue of prejudice altogether.

We find that father has not met his burden to show prejudice or that reversal is warranted.  Both parents denied

---

[5]     Father cites *In re Benjamin M*. (2021) 70 Cal.App.5th 735, *In re A.C*. (2022) 75 Cal.App.5th 1009, and *In re H.V*. (2022) 75 Cal.App.5th 433.

7

Native American ancestry, and DCFS represented that the juvenile court previously found ICWA inapplicable. Both parents stated that they were born in Honduras, Ana and J. were born in Honduras, and there is no suggestion in the record that either parent had any connection to a "tribe, band, nation, or other organized group or community of Indians recognized as eligible for the services provided to Indians by the Secretary [of the Interior] because of their status as Indians." (25 U.S.C. § 1903(8); see also § 224.1, subd. (a) [adopting federal definitions].)

Moreover, nothing in the record suggests any reason to believe either parent's knowledge of their heritage was incorrect, or that any other source would have more accurate information. Neither father nor DCFS has proffered any additional evidence.[6] (See *Dezi C., supra*, 79 Cal.App.5th at p. 774 [for purposes of evaluating whether defective initial inquiry is harmless, "the 'record' means not only the record of proceedings before the juvenile court but also any further proffer the appealing parent makes on appeal"].)

In addition, the harms ICWA was intended to address are not at issue in this case. "ICWA was enacted to curtail 'the separation of large numbers of Indian children from their families and tribes through adoption or foster care placement'" and "'to promote the stability and security of Indian tribes and families.'" (*Dezi C., supra*, 79 Cal.App.5th at p. 780.) Here, however, A. is placed with her half-sister, J., who is now the

---

[6] DCFS presumably could have remedied its statutory failure by inquiring of Ana and J., thus potentially mooting father's appeal and/or obviating any need for remand. DCFS did not do so.

8

prospective adoptive parent.  Thus, "the purpose of ICWA—to prevent the removal of Indian children from their Indian families—is not implicated by the juvenile court's final disposition."  (*In re J.W.* (2022) 81 Cal.App.5th 384, 390.)  Such circumstances also support a finding of harmless error.  (*Id.* at pp. 390-391.)

## DISPOSITION

The juvenile court's order under section 366.26 is affirmed.

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**


COLLINS, ACTING P. J.

We concur:



MORI, J.



ZUKIN, J.